11-3312-pr
Proctor v. LeClaire

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2012

(Argued:  January 9, 2013                              (Decided: April 25, 2013)

Docket No. 11-3312-pr

_____

PATRICK PROCTOR,

Plaintiff-Appellant,

- v. -

LUCIEN J. LECLAIRE, JR., Deputy Commissioner, Department of Correctional Services,

Defendant-Appellee.
_____

Before:  KEARSE, KATZMANN, and LOHIER, Circuit Judges.

Appeal from a judgment of the United States District Court for the Northern District of New York dismissing, on grounds of res judicata and collateral estoppel, plaintiff's action under 42 U.S.C. § 1983 alleging deprivation of due process in the periodic reviews conducted with respect to his administrative confinement in a prison special housing unit.  See 2011 WL 2976911 (July 21, 2011).

Vacated and remanded.

BETH A. WILLIAMS, Washington, D.C. (Stephen Schwartz, Kirkland & Ellis, Washington, D.C., on the brief), for Plaintiff-Appellant.

MARTIN A. HOTVET, Assistant Solicitor General, Albany, New York (Eric. T. Schneiderman, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Denise A. Hartman, Assistant Solicitor General, Albany, New York, on the brief), for Defendant-Appellee.

KEARSE, Circuit Judge:

Plaintiff Patrick Proctor, a New York State prisoner who has been administratively confined since 2003 in a Special Housing Unit (or "SHU") at the Great Meadow Correctional Facility ("Great Meadow") or at the Clinton Correctional Facility, subject to reviews every 60 days, appeals from a judgment of the United States District Court for the Northern District of New York, Gary L. Sharpe, then-Judge, now Chief Judge, dismissing Proctor's amended complaint ("Complaint" or "2010 Complaint") brought under 42 U.S.C. § 1983 alleging that his due process rights have been violated because the decisions to continue his confinement in SHU have been based on evidence that should have been expunged from his record, the periodic reviews have been perfunctory and meaningless, and the reasons given for his continued confinement have been false or misleading. The district court granted the motion of defendant Lucien J. LeClaire, Jr., Deputy Commissioner of the New York State Department of Correctional Services ("DOCS"), to dismiss the 2010 Complaint on the grounds that, because Proctor had previously lost a similar suit, see Proctor v. Kelly, No. 05-cv-0692, 2008 WL 5243925 (N.D.N.Y. Dec. 16, 2008) ("Proctor I"), the present action was barred by principles of res judicata and collateral estoppel, see Proctor v. LeClaire, No. 09-cv-1114, 2011 WL 2976911 (N.D.N.Y. July 21, 2011) ("Proctor II"). Challenging the district court's decision in the present action, Proctor contends principally that neither claim preclusion nor issue preclusion is applicable because

2

his 2010 Complaint includes material allegations of new facts, asserting a cause of action that was not previously litigated or decided. To an extent, we agree, and we therefore vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Since 1989, Proctor has been serving a sentence of 32-1/2 years to life imprisonment for convictions of second-degree murder and attempted escape. He had served prison terms in New York twice before. In November 1994, Proctor escaped from Shawangunk Correctional Facility ("Shawangunk"), was recaptured, and was sentenced to serve nine years and one month in SHU at Great Meadow as disciplinary confinement for, inter alia, escape, weapons possession, assault, and fighting.

A. Special Housing Units

A correctional facility SHU is a designated area that is designed "to maximize facility safety and security," by separating particular inmates from the general prison population. 7 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 300.1(b); see also id. § 300.2. Inmates may be assigned to SHU either for disciplinary reasons, see id. § 301.2, or for administrative reasons, see id. § 301.4. Administrative confinement in SHU may be ordered where "the inmates' presence in general population would pose a threat to the safety and security of the facility." Id. § 301.4(b). SHU inmates are subject to particularly strict living conditions. See id. §§ 304.1-.14 (limited services); id. §§ 305.1-.6 (controls and restrictions); see generally Palmer v. Richards, 364 F.3d 60, 65 & n.3 (2d Cir. 2004).

3

A prisoner who has been confined in SHU for administrative reasons ("administrative segregation" or "Ad Seg") has a due process right to have "[p]rison officials . . . engage in some sort of periodic review of [his] confinement," Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983) ("Helms"); see id. ("administrative segregation may not be used as a pretext for indefinite confinement of an inmate"). New York law requires that these reviews be conducted "every 60 days in accordance with the following procedure":

> (1) A three-member committee consisting of a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff shall examine the inmate's institutional record and prepare and submit to the superintendent or designee a report setting forth the following:

> (i) reasons why the inmate was initially determined to be appropriate for administrative segregation;

> (ii) information on the inmate's subsequent behavior and attitude; and

> (iii) any other factors that they believe may favor retaining the inmate in or releasing the inmate from administrative segregation.

7 NYCRR § 301.4(d)(1). Such reviews must not deny the prisoner basic due process protections. See generally Helms, 459 U.S. at 477 & n.9.

B. Proctor's 2005 Action

In December 2003, after Proctor had served his nine-years-and-one-month sentence of disciplinary confinement in SHU, he was served with an Administrative Segregation Recommendation (the "Ad Seg Recommendation") recommending that, at the end of his disciplinary sentence, he remain assigned to SHU rather than being released into the general prison population. The recommendation cited, inter alia, 14 specific instances of Proctor's alleged misbehavior (plus

4

general allegations of misbehavior), and it asserted that Proctor was an extreme risk to the safety and security of facility staff and inmates with whom he could come into contact.

As described in Proctor I, part of the Ad Seg Recommendation cited Proctor's conduct before he was confined in SHU, including his 1994 escape from Shawangunk, other escapes or attempted escapes dating back to at least 1984, and his 1990 stabbing of another inmate. See, e.g., Proctor I, 2008 WL 5243925, at *14. Proctor's alleged misconduct while in SHU--as recorded in Unusual Incident ("UI") reports or staff memoranda, most of which did not result in misbehavior reports--included his possession of a sharpened nail clipper (a charge that did become the subject of a misbehavior report, but which was later reversed and eventually expunged); slipping out of his handcuffs; starting multiple fires; telephoning a citizen whom he urged to firebomb a certain home; stabbing another inmate housed in SHU; and concealing a razor in his rectum (as evidenced by x-rays). See id. at *14-*16, *21.

A hearing, attended by Proctor, was held in December 2003 to evaluate the bases for the Ad Seg Recommendation. See generally 7 NYCRR § 301.4(a) (hearing requirement); id. §§ 254.1-.6 (hearing procedures); id. § 251-3.1 (formal charge requirements). The hearing officer concluded that Proctor did "pose a threat to the safety and security of the facility," id. § 301.4(b), and ordered Proctor's placement in administrative segregation.

In 2005, Proctor, proceeding pro se and in forma pauperis, commenced the action that was eventually dismissed in Proctor I. Seven of the 10 causes of action asserted in his amended complaint (or "2005 complaint") alleged that various DOCS employees, including LeClaire, had violated his due process rights in connection with the December 2003 hearing that authorized his administrative confinement. Proctor alleged principally that his administrative segregation hearing

5

was based on false allegations of misconduct that had been dismissed or expunged and thus should not have been considered; that he was denied the right to present witnesses in his defense; that the hearing officer was not impartial; and that portions of the hearing transcript had been destroyed. (Proctor also asserted three Eighth Amendment claims that are not relevant to his present case.) Proctor sought monetary and injunctive relief, including the expungement of all records that had been used in the December 2003 hearing.

Following discovery, the defendants moved for summary judgment. With respect to the due process claims, they contended, inter alia, that several of the defendants had not been personally involved in Proctor's administrative segregation hearing, and that Proctor had received all of the process to which he was entitled. Proctor cross-moved for summary judgment in his favor, reiterating the allegations in the 2005 complaint, and adding in his memorandum of law

> that Defendants . . . continue to maintain me in Ad Seg (based upon sham, perfunctory '60 day-Reviews') and they are using the 'cloak of Ad Seg' as a pretext to indefinitely confine me and punish me based upon false information . . . [and] continue[] to [v]iolate due process [by denying me] Constitutionally mandated meaningful reviews.

Proctor's memorandum added that LeClaire had been repeatedly notified of the allegedly false information that was being used as grounds for Proctor's administrative segregation but had simply rubber-stamped the periodic reports recommending Proctor's continued confinement in SHU.

In reply to Proctor's cross-motion, the defendants submitted a memorandum of law arguing that "any alleged due process claim regarding periodic review is distinct from due process claims associated with the initial placement in ad seg," and that "[t]he [2005 c]omplaint is devoid of any allegations claiming any due process violation with respect to the periodic review." The defendants contended that Proctor's new claim "should not be entertained" by the court.

6

The magistrate judge to whom the motions had been referred for report and recommendation recommended that the defendants' motion for summary judgment be granted and that Proctor's cross-motion be denied. As to the due process claims arising out of the December 2003 administrative segregation hearing, the magistrate judge stated that the hearing had been conducted in accordance with New York State regulations and in accordance with due process. See Report and Recommendation of the Magistrate Judge Gustave J. DiBianco dated September 30, 2008 ("Magistrate's 2008 Report"), at 14-29.

The magistrate judge added that Proctor's claim for denial of due process with respect to the periodic reviews was not properly before the court because there was no mention of such a claim in the 2005 complaint. The magistrate judge noted that

> [t]he question of periodic review is a due process claim that is separate from the claim for the initial placement in administrative segregation. . . .
>
> Plaintiff's motion for summary judgment, filed in 2008, is the **first time** in this case that plaintiff is complaining about his periodic reviews. There is absolutely **no** mention of periodic reviews in his amended complaint that was initially submitted as a motion to amend on September 8, 2005. Since plaintiff was placed in administrative segregation in 2003, by September of 2005, there would have been many of those periodic reviews to challenge if plaintiff wished to do so. Defendants are correct in arguing that the constitutionality of plaintiff's periodic reviews is not before the court.

Id. at 33-34 (emphases in original).

In a decision dated December 16, 2008, District Judge Glenn T. Suddaby, to whom Proctor I was then assigned, accepted and adopted the magistrate judge's recommendation, see, e.g., Proctor I, 2008 WL 5243925, at *1, *5, *6, *7, *9-*28, and dismissed the 2005 complaint. The court found that no evidence had been proffered to show a denial of procedural due process, pointing out that Proctor had been afforded, inter alia,

7

(1) substantial notice of the hearing; (2) the right to choose an assistant before the hearing; (3) the ability to have two witnesses interviewed; (4) notice of his rights during the hearing; (5) the ability to be present for the entire hearing; (6) wide latitude to argue and object during the hearing; (7) the opportunity to question Defendant Seyfert and Deputy Superintendent Carpenter at the hearing; (8) the opportunity to challenge evidence against him; (9) a deliberately and patiently conducted hearing; and (10) a written hearing determination that was supported by at least some evidence.

Id. at *4 (internal quotation marks omitted). The district court ruled that there was also no basis for Proctor's claims of the denial of substantive due process. It stated that, given the record of Proctor's history of violent behavior, both in and out of prison, the decision to impose administrative segregation could not be viewed as arbitrary in the constitutional sense. See id. at *6.

With respect to Proctor's belatedly-raised claim that he was denied due process in the periodic reviews, the district court noted

[a]s an initial matter, . . . that Plaintiff appears to have asserted his procedural due process claim regarding periodic reviews for the first time in his Memorandum of Law dated February 7, 2008, nearly two and a half years after he filed an [a]mended [c]omplaint . . . and nearly one and a half years after discovery closed in the action . . . .

Proctor I, 2008 WL 5243925, at *6 (emphases in original). The court concluded that

[a]s a result, it appears that Defendants have conducted no discovery regarding the claim. For this reason alone, this claim is not properly before the Court, no matter how much special solicitude Plaintiff is afforded.

Id. (emphasis added).

The court went on to say, however, that it would briefly address the merits of the challenge to the periodic reviews "in the interest of thoroughness." Id. The court concluded that Proctor had not been denied meaningful periodic reviews; that he had not been kept in SHU for new reasons ("the Court can find no evidence in the record that Plaintiff continued to remain in administrative segregation as a result of a new reason that arose after the date on which he was

8

originally placed in administrative segregation"); and that in the absence of any new reason for his administrative confinement in SHU, Proctor had not been deprived of any right to an explanation of the decisions to continue that confinement. Proctor I, 2008 WL 5243925, at *7.

Judgment was entered dismissing the 2005 complaint. Proctor timely appealed; this Court dismissed the appeal as lacking any basis in fact or law.

C. The Present Action

In 2009, Proctor, again proceeding pro se and in forma pauperis, commenced the present action against LeClaire; Proctor filed his amended Complaint in 2010. The 2010 Complaint alleged principally that the periodic reviews of his SHU status--first occurring on February 23, 2004, and conducted every 60 days thereafter--had been "perfunctory and meaningless," (2010 Complaint ¶ 102), and were "performed merely as a formality and . . . a pretext . . . to indefinitely confine [Proctor] to Ad Seg" (id. ¶ 47). Proctor contended that all references to all of the allegations mentioned in the December 2003 Ad Seg Recommendation should have been expunged from his record--one of which he stated he had been misled to believe was expunged--and that that allegedly false information remained the basis for his continued administrative segregation (see, e.g., 2010 Complaint ¶¶ 37, 48, 53, 84); that new or changed reasons given by the review committee for continuing his administrative segregation were false or misleading (see, e.g., id. ¶¶ 42-46, 71); and that he was not provided advance notice of such proposed rationales and thus had been unable to defend against them (see id.). He also alleged that the reviews were "discriminatory" in that he was not allowed to participate in them but was allowed only to raise objections after the decisions had been made. (See, e.g., id. ¶¶ 14, 46, 50.) The 2010 Complaint alleged that some letters Proctor had

9

submitted to the review committee were not in fact reviewed, denying him a right to be heard. (See, e.g., id. ¶¶ 35, 62; see also id. ¶ 74 (alleging that Proctor's counselor informed Proctor that "he never saw any letters [Proctor] wrote for consideration, [and had not] sat down with any security supervisor and/or committee chairman to discuss [Proctor's] Ad Seg status").) Proctor also alleged that he had been informed by multiple sources that he was being detained simply because his escape from Shawangunk had angered DOCS staff. (See id. ¶¶ 91-95; id. ¶ 92 (alleging that Proctor "was told by several . . . staff . . . that the word is he will remain in Ad Seg for the rest of his sentence" because of his earlier escape and because he had "caus[ed] embarrassment for the Commissioner, the Department and the Governor"); id. ¶ 94 (alleging that DOCS Assistant Commissioner told Proctor, "I don't know if you will ever get out. I was in the office th[e] day [of your escape]. You pissed a lot of people off. They think the Governor lost the election because of the escape that day.").)

LeClaire moved to dismiss the 2010 Complaint on grounds that (1) the Complaint failed to allege his personal involvement in the alleged due process violations; (2) Proctor's claim was barred by claim preclusion; and (3) the Complaint was untimely. Judge Sharpe, to whom Proctor II was assigned, referred the motion to a magistrate judge for report and recommendation.

The magistrate judge concluded that Proctor had sufficiently alleged LeClaire's participation in the claimed violations and that Proctor's claim was not time-barred. See Report and Recommendation of the Magistrate Judge David E. Peebles dated February 17, 2011 ("Magistrate's 2011 Report"), at 14, 26. But he recommended that the 2010 Complaint be dismissed on grounds of claim preclusion and issue preclusion. See id. at 23-24.

The magistrate judge stated, first, that Proctor could have raised his periodic-reviews claim in Proctor I, stating that "[b]y the time of plaintiff's submission of his summary judgment brief

10

in [Proctor I] . . . twenty-five periodic reviews of administrative segregation . . . had already been conducted." Magistrate's 2011 Report at 19. The magistrate judge also concluded that these periodic reviews were in fact raised and were addressed by Judge Suddaby in Proctor I. See Magistrate's 2011 Report at 17, 23.

As to the periodic reviews that post-dated Proctor's summary judgment submission, the magistrate judge, focusing on "'whether the same transaction or connected series of transactions is at issue,'" id. at 19 (quoting Monahan v. New York City Department of Corrections, 214 F.3d 275, 289 (2d Cir.) (emphasis in Monahan), cert denied, 531 U.S. 1035 (2000)), recommended that Proctor's 2010 Complaint be dismissed on the ground of claim preclusion. He viewed all of Proctor's factual allegations as "deriv[ing] ultimately from the same origin or motivation . . . that drove his claims in [the Proctor I] complaint," Magistrate's 2011 Report at 21 (internal quotation marks omitted), and viewed Proctor's current claim as alleging "the very same . . . unconstitutional conduct" that he had challenged in the prior action, id. at 23.

The magistrate judge stated, however, that

> [t]his is not to say . . . that a future action or series of future occurrences involving plaintiff's administrative segregation review could not at some point suffice to create a new, viable section 1983 action. . . . It may well be that some time in the future the plaintiff can sufficiently allege changed circumstances altering the factual predicate of his procedural due process claim such that it would not be barred by the original judgment. . . . Claims based on conduct or procedures which were not contemplated by, or a direct result of, the earlier action would not necessarily be precluded.

Id. at 22 (internal quotation marks omitted).

The magistrate judge also opined that Proctor's 2010 Complaint should be dismissed on the ground that it was "subject to issue preclusion." Id. at 24. He stated that "Judge Suddaby considered and addressed the merits of [Proctor's] procedural due process claim stemming from the

11

contention that period[ic] reviews of his administrative segregation status have not been meaningful, but instead are sham proceedings based upon false information." Id.

Proctor objected to the Magistrate's 2011 Report, arguing, inter alia, that the magistrate judge erred in suggesting that Judge Suddaby, when deciding Proctor I, had addressed--or even seen-- 25 periodic reviews. Proctor also stated that he had not been aware of the sham nature of the earlier reviews, or of LeClaire's "discriminatory" policy and practice, and that he therefore could not have asserted such a claim when he filed his complaint in Proctor I. Proctor argued that his periodic-reviews due process claim--as contrasted with his due process claims arising out of the December 2003 hearing--was not before the Proctor I court and thus that Judge Suddaby's analysis of the periodic reviews was not necessary to the judgment in Proctor I.

The district court rejected Proctor's objections and adopted the Magistrate's 2011 Report in its entirety. See Proctor II, 2011 WL 2976911, at *3, *1. Stating that the doctrine of claim preclusion forecloses a cause of action where "there was a final judgment on the merits in a previous proceeding, involving the same parties or their privies, and arising out of the same transaction or connected series of transactions," id. at *2 (internal quotation marks omitted), the court found that principle applicable to Proctor's 2010 Complaint, stating as follows:

> In the prior action, the issue of sixty-day reviews was not raised in Proctor's complaint. . . . Rather, the issue was first raised and resolved at the summary judgment stage.FN5
>
> FN5. While this claim went unaddressed in Magistrate Judge Gustave J. DiBianco's report and recommendation, District Judge Glenn T. Suddaby concluded that although the issue was not properly before the court, he would address the merits of the claim "in the interest of thoroughness." (See Proctor v. Kelly, No. 9:05-CV-692, Dec. 16, 2008 Order at 15, Dkt. No. 110.)

Proctor II, 2011 WL 2976911, at *3 & n.5 (emphases ours). The court continued:

12

Thus, with respect to the issue of claim preclusion, Judge Peebles recommended dismissal because the claim should have been, and was, raised in the previous action. . . . Proctor's due process claim concerning his periodic reviews is the same claim he advanced in the prior action. . . . In fact, Proctor's [2010 C]omplaint contends that LeClaire's discriminatory policy or practice concerning his reviews began on or about February 23, 2004, (see Am. Compl. ¶¶ at 13-14), and that since April 2008, each review has employed this discriminatory policy, (see id. at ¶ 77). Proctor's first claim involved the initial administrative segregation determination, and his second claim developed to include the periodic reviews based on the same facts derive[d] ultimately from the same origin or motivation. . . . [T]his lawsuit would have formed a convenient trial unit with the previous action since both involve substantially the same occurrences regarding [Proctor's] periodic reviews of his administrative confinement. . . . Both actions involve facts that occurred as a "single transaction or series of related transactions." Waldman[ v. Vill. of Kiryas Joel], 207 F.3d [105,] 112 [(2d Cir. 2000)] . . . . Accordingly, treating the facts of both actions as a single transaction would conform to the parties' expectations, . . . which supports Judge Peebles's reasoning that the doctrine of claim preclusion bars Proctor's claim.

Proctor II, 2011 WL 2976911, at *3 (other internal quotation marks omitted) (emphases ours).

The district court also agreed with the magistrate judge's recommendation to apply principles of issue preclusion. The court ruled that Proctor's due process claim had "already [been] addressed on the merits" and was thus barred, id. at *4, stating that "[i]ssue preclusion bars [a] party that has had a full and fair opportunity to litigate an issue of fact from relitigating the same issue once it has been decided against that party," id. (internal quotation marks omitted).

Proctor timely appealed the Proctor II decision, and this Court appointed counsel to represent him on the appeal.

13

On appeal, Proctor principally pursues his contentions that his claim of denial of due process in the periodic reviews was not part of Proctor I, was not required to be part of Proctor I, and no decision of such a claim was necessary to the judgment in Proctor I. We agree that the district court's applications of claim preclusion and issue preclusion, which we review de novo, see, e.g., Computer Associates International, Inc. v. Altai, Inc., 126 F.3d 365, 368 (2d Cir. 1997) ("Computer Associates"), cert. denied 523 U.S. 1106 (1998), were in large part erroneous.

A.  Claim Preclusion

Under the doctrine of res judicata, or claim preclusion, "'[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action'" to support or to defend against the alleged cause of action. SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1463 (2d Cir. 1996) ("First Jersey") (quoting Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)), cert. denied, 522 U.S. 812 (1997).

> [T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, [i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

First Jersey, 101 F.3d at 1463 (quoting Nevada v. United States, 463 U.S. 110, 129-30 (1983) (internal quotation marks omitted) (emphases ours)).  The fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second.  See, e.g., Interoceania Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91

(2d Cir. 1997) ("Interoceania"). "'[A] prior judgment is res judicata only as to suits involving the same cause of action.'" First Jersey, 101 F.3d at 1464 (quoting Lawlor v. National Screen Service Corp., 349 U.S. 322, 329 (1955) (emphasis ours)); see, e.g., Nevada v. United States, 463 U.S. at 128-30 (court must determine whether same "cause of action" is sued on); cf. First Jersey, 101 F.3d at 1464 ("The claim that First Jersey defrauded customers in the sale, purchase, and repurchase of certain securities in 1975-1979 is not the same as the claim that First Jersey defrauded customers in the sale, purchase, and repurchase of other securities in 1982-1985.").

"For purposes of res judicata, [t]he scope of litigation is framed by the complaint at the time it is filed." Computer Associates, 126 F.3d at 369-70 (internal quotation marks omitted). Acts committed after the filing of the complaint are not within the scope of the plaintiff's claim. And "[a]lthough a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, see Fed. R. Civ. P. 15(c), he is not required to do so . . . ." Computer Associates, 126 F.3d at 370 (citing First Jersey, 101 F.3d at 1464). "If the second litigation involve[s] different transactions, and especially subsequent transactions, there generally is no claim preclusion." First Jersey, 101 F.3d at 1464 (emphases added); see, e.g., Lawlor, 349 U.S. at 328 (no res judicata bar to antitrust claim for anticompetitive conduct occurring subsequent to first antitrust suit); Crowe v. Leeke, 550 F.2d 184, 187 (4th Cir. 1977) ("res judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action").

In the present case, Proctor's current due process challenge to the periodic reviews was not within the scope of his 2005 complaint. The due process claims asserted in the original and amended complaints in Proctor I were that Proctor was denied due process in connection with the

15

December 2003 hearing. As recognized by the defendants and the district court in Proctor I, those pleadings made no mention of any due process claim with respect to the periodic reviews. See, e.g., Proctor I, 2008 WL 5243925, at *1 n.1 ("Plaintiff's claim regarding periodic reviews was raised for the first time in his February 7, 2008 Memorandum of Law, more than two years after Plaintiff filed his [a]mended [c]omplaint"); Magistrate's 2008 Report at 33-34 ("[t]here is absolutely **no** mention of periodic reviews in [Proctor's] amended complaint . . . . Defendants are correct . . . that the constitutionality of plaintiff's periodic reviews is not before the court" (emphasis in original)). Thus, a challenge to the periodic reviews, though raised in Proctor's 2008 cross-motion for summary judgment, was not within the scope of Proctor I.

By the time Proctor commenced Proctor I some of the mandated 60-day periodic reviews had taken place. And to the extent that Proctor believed that those reviews were constitutionally deficient, he could have joined such a claim with his claims that he was denied due process in connection with the December 2003 hearing. But he was not required to do so because the claims raised in Proctor I and the claim raised in this suit do not constitute the same cause of action. The claims raised in Proctor I focused on the decision against Proctor in December 2003 by a hearing officer and on the ensuing affirmance of that decision by another corrections official; the present claim focuses on decisions adverse to Proctor made periodically after 2003 by committees consisting of three persons. Further, the decision whether to continue a prisoner's administrative segregation depends not only on the prisoner's history that led to his SHU confinement, but on his "subsequent behavior and attitude," 7 NYCRR § 301.4(d)(1)(ii) (emphasis added), and on other circumstances as they exist at the time of the review, see generally Helms, 459 U.S. at 477 n.9.

16

Thus, although the Proctor II court viewed the initial confinement and the subsequent periodic reviews as "the same transaction," 2011 WL 2976911, at *2 (internal quotation marks omitted), and believed that "treating the facts of both [the initial confinement and the continued confinement] as a single transaction would conform to the parties' expectations," id. at *3 (internal quotation marks omitted), we disagree. If the initial decision to administratively confine an inmate and the subsequent decisions to continue his confinement were a single transaction for res judicata purposes, a judgment ruling that there was no due process violation in the original administrative confinement would, in effect, relieve subsequent reviewers of any due process constraints. The very fact that there is a requirement, however, that after the initial decision imposing administrative segregation "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates," Helms, 459 U.S. at 477 n.9 (emphasis added), means that the initial authorization for confinement and the subsequent decisions to continue confinement--although plainly involving considerations that overlap--are not, and could not reasonably be expected to be, the "same transaction." Accordingly, we conclude that the district court erred in ruling that Proctor's present due process claim with respect to the post-2003 periodic reviews is barred by the Proctor I judgment rejecting his challenges to the December 2003 hearing.

Finally, we see no basis for any suggestion that the district court in Proctor I in effect allowed Proctor to supplement his 2005 complaint with a due process challenge to the periodic reviews. As set out in Part I.B. above, the district court noted that the periodic-reviews claim was not mentioned until Proctor's 2008 cross-motion for summary judgment, "nearly one and a half years after discovery closed in the action," Proctor I, 2008 WL 5243925, at *6 (emphasis in original). And rather than reopening discovery, as would have been necessary had the court allowed Proctor to file

17

a supplemental complaint to assert that previously unmentioned claim, the court stated that defendants had had no opportunity for discovery with respect to the periodic reviews and that "[f]or this reason alone, this claim is not properly before the Court," id.

Although the Proctor I court went on to address the periodic reviews "in the interest of thoroughness," id., it thereby went beyond the scope of the 2005 complaint; and its rejection of Proctor's challenge to the December 2003 hearing did not in any way depend on the adequacy or appropriateness of the periodic reviews that commenced in 2004. We conclude that the Proctor II court erred in ruling that Proctor's present action is barred by principles of claim preclusion.

B. Issue Preclusion

For similar reasons, we conclude that, except as to certain issues, the Proctor II court's application of issue preclusion was inappropriate. Issue preclusion, or collateral estoppel, which applies not to claims or to causes of action as a whole but rather to issues, bars litigation of an issue when

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation marks omitted); see, e.g., McKithen v. Brown, 481 F.3d 89, 105 (2d Cir. 2007) ("McKithen"), cert. denied, 552 U.S. 1179 (2008); Interoceania, 107 F.3d at 91. For issue preclusion to apply, all of these conditions must be met, although the allocation of the burden of proof is divided.

> The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion . . . . In contrast, the burden of showing that the prior action did not

18

afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion.

Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996). If all four of the above conditions are met, issue preclusion is applicable even if the two suits are not based on the same cause of action. See, e.g., Lawlor, 349 U.S. at 326; Balderman v. United States Veterans Administration, 870 F.2d 57, 62 (2d Cir. 1989).

If a party is not shown to have had a full and fair opportunity to litigate the issue, he is not precluded from litigating it in a subsequent case. See, e.g., Allen v. McCurry, 449 U.S. 90, 101 (1980). Similarly, issue preclusion is inappropriate if "the issue in question" was not "actually and necessarily decided in a prior proceeding." McKithen, 481 F.3d at 105 (internal quotation marks omitted) (emphasis added); see, e.g., Interoceania 107 F.3d at 92 (defense not barred by collateral estoppel where it was "not 'actually litigated and decided' in the previous proceeding and certainly was not 'necessary to support a valid and final judgment on the merits'" (emphasis ours)). The district court in Proctor II, in describing the requirements for issue preclusion, omitted the condition that the decision in the first case must have been necessary to support the final judgment, see 2011 WL 2976911, at *4.

In the present action, Proctor contends principally (1) that the periodic reviews were a "sham," (2) that information he provided to the review committees was not considered, (3) that the reasons given by the review committees for continuing his administrative segregation were new, were false or misleading, and were based on false information, and (4) that the review committees' decisions were improperly based on evidence that should have been expunged from his record. Only the last of these contentions is--in part--subject to issue preclusion.

19

The amended complaint in Proctor I clearly involved Proctor's contention that certain evidence should have been expunged from his record; Proctor argued in Proctor I that where incidents were reflected only in UI reports and not in misbehavior reports, those incidents did not occur. Proctor's contention that it was improper for the hearing officer to rely on incidents that were described in UI reports but not reflected in misbehavior reports was squarely rejected in Proctor I: "To the extent that UI reports were considered where misbehavior reports were not issued, the court does not find any error in their use." 2008 WL 5243925, at *21; see id. at *5. Thus, this legal issue--as to which Proctor has not shown any lack of opportunity to litigate--was actually decided and was necessary to the ultimate judgment that the December 2003 hearing did not violate Proctor's due process rights. This ruling also rejected Proctor's contention that due process required that all of the records that were used in the December 2003 hearing be expunged from the record. Thus, Proctor is barred from relitigating both the issue of whether the use of incidents described in UI reports that were not the subject of misbehavior reports violates due process and--with one exception discussed in Part II.B.2 below--the issue of whether due process requires that the UI reports that were considered in his December 2003 hearing be expunged from his record.

1. "[U]nclear" Contentions and Rulings

Despite finding in general that the hearing officer did not err in relying on UI reports that were not followed by misbehavior reports, the court in Proctor I did not, in connection with that ruling, specifically address most of Proctor's contentions that the hearing officer had relied on false or expunged information. Rather, the Proctor I court found that "[t]o the extent that [Proctor] claims that [the December 2003 hearing officer] relied upon 'false and expunged' information, it is unclear

20

to what [Proctor] is referring," 2008 WL 5243925, at *21 (emphasis added). It is thus also unclear to what specific false-information issues the Proctor I court was referring in finding no error.

While the lack of clarity as to Proctor's specific contentions would not prevent the application of claim preclusion if that doctrine were otherwise applicable, it prevents the application of issue preclusion because, inter alia, it is not clear that the false-or-expunged evidence issues in the two actions are identical, and because we cannot conclude that in Proctor I the contentions that Proctor's initial administrative confinement was based on false or expunged information were actually resolved.

2. The Issue of the Nail Clipper Incident

The Proctor I court, in considering Proctor's contention that expunged matter should not have been considered in the December 2003 hearing, did expressly address the UI-described conduct that was also the subject of a misbehavior report, i.e., Proctor's alleged possession of a sharpened nail clipper. The court noted that "the UI from this incident was considered in th[e 2003] administrative segregation proceeding" after Proctor had "had the charges reversed and expunged" in the mid 1990s. 2008 WL 5243925, at *21. But the court does not appear to have actually decided that it was not error for the hearing officer to consider that incident. The Proctor I court stated that "[t]o the extent that [the hearing officer] considered the one incident involving the nail clipper, the court still finds that no due process violation occurred. . . . If it was error, the error was certainly not 'prejudicial'" to Proctor. Id. at *22 (footnote omitted) (emphasis added). The court noted that it "ma[de] no . . . finding in this case" that consideration of the nail clipper incident was a constitutional error. Id. at *22 n.11. It stated that "[t]here were so

21

many other incidents upon which [the hearing officer] could [have] base[d] his decision" that, "[e]ven if the court were to assume that [the hearing officer] erred in considering the UI, and even if that error could rise to the level of a constitutional error, the court would find the error harmless." Id. at *22 (footnote omitted) (emphasis added). Any finding that an error was harmless, however, must be based on a consideration of the context in which the error was committed. A finding that an error was harmless in the context of an initial hearing is not determinative of whether the same error would be harmless in connection with subsequent reviews which are to consider evidence as to subsequent behavior and contemporaneous circumstances.

In sum, to the extent that Proctor contends that any consideration of the expunged allegation of his possession of a sharpened nail clipper violates due process, we do not see that that issue was resolved in Proctor I. Proctor is not precluded from pursuing that issue in the context of his due process challenge to the conduct of the periodic reviews.

### 3. The Issue of New Reasons Given by the Review Committees

Proctor also contends that decisions to continue his confinement in administrative segregation were based on new, and false, reasons that differed from those found to warrant his original confinement. The court in Proctor I found that no new reasons had been given. See 2008 WL 5243925, at *7. However, as discussed above, nothing the Proctor I court decided as to the post-2003 periodic reviews, in the interest of thoroughness, was necessary to the judgment in Proctor I that the December 2003 hearing did not violate due process. Thus, Proctor's contention that in fact new and false rationales were given for his continued confinement is not barred by issue preclusion.

22

#### 4. Opportunity To Litigate with Respect to the Periodic Reviews

Finally, the record in Proctor I in no way indicates that Proctor had a full and fair opportunity to litigate any allegation that was directed solely at the conduct of the periodic reviews. As discussed above, in Proctor I the defendants argued that the periodic reviews were not in the case; and the district court agreed that a challenge to the periodic reviews was not properly before the court. The court indicated that there had been no prior mention of the periodic reviews and that they had not been the subject of discovery. As the conduct of those reviews--which began in 2004--was not relevant to Proctor's challenge to the constitutionality of the December 2003 hearing, the Proctor I court did not reopen discovery for development of the issues specific to those reviews. Issues that relate to the periodic reviews and that had no bearing on the constitutionality of the December 2003 hearing are thus not barred by issue preclusion.

We note that the Proctor II court expressed concern that if claim preclusion or issue preclusion did not prevent Proctor from challenging the periodic reviews, which occur every 60 days, he could bring a new action after every adverse decision, see 2011 WL 2976911, at *3. In theory, such repetitive litigation would be possible. In practice, however, few rational persons will use their own financial resources to repeatedly pursue claims that have been found frivolous; and federal law places limits on the number of suits a prisoner may bring in forma pauperis. See 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment [in forma pauperis] if the prisoner has, on 3 or more prior occasions, while incarcerated . . . brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous . . . or fails to state a claim upon which relief may be granted . . . .").

## CONCLUSION

We have considered all of the arguments of both sides in support of their respective positions with respect to claim preclusion and issue preclusion, and, except as indicated above, have found them to be without merit. The judgment of the district court is vacated, and the matter is remanded for further proceedings consistent with this opinion. We express no view as to the merits of Proctor's present cause of action.