17-3097-cv
*Bushey v. Berryhill*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand eighteen.

Present:
> RALPH K. WINTER,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,

---

TINA BUSHEY,

> *Plaintiff-Appellant*,

v. 17-3097-cv

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

> *Defendant-Appellee*.

---

For Plaintiff-Appellant: MARK SCHNEIDER, Plattsburgh, NY.

For Defendant-Appellant: HASEEB FATMI, Special Assistant United States Attorney (Stephen P. Conte, Regional Chief Counsel— Region II, Office of the General Counsel, Social Security Administration, *on the brief*), *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a September 27, 2017 judgment of the United States District Court for the Northern District of New York (Suddaby, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Tina Bushey ("Bushey") appeals from a judgment of the United States District Court for the Northern District of New York, affirming the Acting Commissioner of Social Security's 2015 denial of her application for disability benefits. The Commissioner had previously denied Bushey's earlier application for disability benefits in 2010, a decision affirmed by both the district court and this Court, *see Bushey v. Colvin*, 552 Fed. App'x 97 (2d Cir. 2014) ("*Bushey I*"), and the Commissioner had also previously denied Bushey's additional application for disability benefits in 2013, a decision again affirmed by both the district court and this Court, *see Bushey v. Colvin*, 607 Fed. App'x 114 (2d Cir. 2015) ("*Bushey II*"). Bushey challenges the Commissioner's instant denial, which, *inter alia*, involved a determination that she was not disabled from April 19, 2012 through March 3, 2015. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**A. Overview**

A claimant seeking benefits under 42 U.S.C. § 423 or 42 U.S.C. § 1381a "bears the ultimate burden of proving that [she] was disabled throughout the period for which benefits are sought." *Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015) (per curiam).

> The Commissioner has established a five-step sequential evaluation for adjudication of disability claims, set forth at 20 C.F.R. § 404.1520. First, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. *Id.* § 404.1520(b). If so, the claimant is not disabled. Second, if the claimant is not working, the Commissioner must determine whether the claimant has a "severe" impairment, *i.e.,* an impairment that limits [her] ability to do physical or mental work-related

2

activities. *Id.* §§ 404.1520(c), 404.1521. If not, the claimant is not disabled. Third, if there is a severe impairment, the Commissioner determines if the impairment meets or equals the criteria of a *per se* disabling impairment contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P (Listings of Impairment). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the claimant's impairment does not meet or equal a listed impairment, before proceeding to step four, the Commissioner determines, based on all the relevant medical and other evidence of record, the claimant's "residual functional capacity," which is what the claimant can still do despite the limitations imposed by his impairment. *Id.* §§ 404.1520(a)(4), (e), 404.1545(a). Fourth, the Commissioner considers whether the claimant's residual functional capacity permits [her] to return to his past relevant work. *Id.* §§ 404.1520(e), (f), 404.1560(b). If so, the claimant is not disabled. Fifth, if the claimant cannot return to [her] past work, the Commissioner considers, based on the claimant's residual functional capacity and vocational factors, whether the claimant can do other work existing in significant numbers in the national economy. *Id.* §§ 404.1520(g), 404.1560(b). If so, the claimant is not disabled.

*Id.* at 374 n.2

"When we review the Commissioner's denial of Social Security benefits, 'our focus is not so much on the district court's ruling as it is on the administrative ruling.'" *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Schaal v. Apfel*, 134 F.3d 496, 500–01 (2d Cir. 1998)). "[W]e do not," however, "substitute our judgment for the agency's." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). We may reverse an ALJ's finding that a claimant is not disabled only if the ALJ applied the incorrect legal standards, or if after "conduct[ing] a plenary review of the administrative record," we conclude that, "considering the record as a whole," the ALJ's decision is not supported by "substantial evidence." *Brault*, 683 F.3d at 447 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "Substantial evidence is 'more than a mere scintilla.'" *Id.* (quoting *Moran*, 569 F.3d at 112). "But it is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Id.* at 448. "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a

3

reasonable factfinder would *have to conclude otherwise*." *Id.* (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). We also "defer to the Commissioner's resolution of conflicting evidence." *Cage*, 692 F.3d at 122.

## B. Issue Preclusion

We begin by noting that Bushey is precluded from re-litigating the question of whether she was disabled on or before April 18, 2012. Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)); *see also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (noting that issue preclusion applies when an *agency* resolves a disputed matter that the parties had a full and fair opportunity to litigate, and that same matter later comes before a *court*). We apply issue preclusion in a situation where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)). Here, Bushey had a full and fair opportunity to establish her disability from before April 18, 2012, and— as noted above—the matter was actually litigated and decided by both the district court and our Court, *see Bushey II*, 607 Fed. App'x at 115–16 . She is therefore precluded from re-litigating the matter. *See Marcel Fashions*, 779 F.3d at 108.

Thus, to claim benefits now, Bushey must submit evidence, which she did not submit during her earlier adjudications, that she was disabled as of April 19, 2012. *See id.* To that end, we

4

note that the vast majority of arguments that Bushey makes in her brief on appeal are, verbatim, arguments that she made in her previous appeal to this Court—citing the same case law and the same pre-April 18, 2012 evidence. We reject those arguments based solely on previously submitted evidence for the same reasons as we did in *Bushey II*. We therefore address only (what we discern as) Bushey's *new* arguments.

### C. Listing 12.05(C)

First, Bushey notes that on November 21, 2014, Dr. Richard Liotta ("Liotta") determined that Bushey's full-scale IQ was 66. Bushey therefore argues that she is *per se* disabled under (then-existing) Listing 12.05(C), and the ALJ thus erred in her Step Three determination. We reject Bushey's argument.

Under the version of Listing 12.05 in effect at the time of Bushey's application, a person is *per se* disabled if she exhibits "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The Listing also stated that "[t]he required level of severity for this disorder is met when" the applicant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at 152. An applicant's burden to establish *per se* disability under this Listing is twofold. *See id.* at 152–53 & n.4. First, the applicant must establish the requirements of Subsection C itself—*i.e.*, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See id.* at 152. Second, the applicant must carry "her *separate* burden of establishing that she suffers from qualifying deficits in adaptive functioning," and that those

5

deficits "initially manifested . . . before age 22." *Id.* at 152 n.4, 153 (emphasis added). "Adaptive functioning refers to an individual's 'ability to cope with the challenges of ordinary everyday life.'" *Id.* at 153 (internal brackets omitted) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)). Thus, "'persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job,' and are therefore not disabled, if their adaptive functioning is sufficiently intact." *Id.* (quoting *Novy*, 497 F.3d at 709).

Here, Bushey argues that she was *per se* disabled under Listing 12.05(C) because Liotta determined that she possessed a full-scale IQ of 66 and the record suggests that she possessed "a physical or other mental impairment imposing an additional and significant work-related limitation of function" during the relevant period. Although the ALJ determined that Bushey failed to qualify as *per se* disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 1, the ALJ did not state on the record that Bushey specifically failed to qualify as *per se* disabled under Listing 12.05(C). However, "[a]n ALJ does not have to state on the record every reason justifying a decision," *Brault*, 683 F.3d at 448, and "[w]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Here, even assuming *arguendo* that Bushey has carried her burden of establishing "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," the record does not support a finding that she suffered from "qualifying deficits in adaptive functioning" during the relevant period. *See Talavera*, 697 F.3d at 152–53 & n.4. Dr. Alan Dubro concluded in an April 9, 2010 assessment, for example, that his results were "*not* consistent with any psychiatric or learning problems[] which significantly interfere with [Bushey's] ability to function on a daily basis," and

6

Bushey could therefore "regularly attend[] to a routine and maintain[] a schedule." R. at 404–05 (emphasis added). Similarly, Dr. Brett Hartman ("Hartman") noted in a September 26, 2013 evaluation that Bushey reported being "able to dress, bathe, and groom herself," and manage her own money. R. at 376. Bushey also informed her treating psychologist in 2013 "that on a typical day, she takes care of her two children and, in addition, every other weekend she cares for two stepchildren." R. at 20, 388. Bushey's "cognitive faculties," in other words, "had been examined by a number of medical professionals prior to Dr. [Liotta]'s administration of the IQ test, and none reported that she suffered from mental impairments that would materially limit her ability to cope with the challenges of ordinary life." *Talavera*, 697 F.3d at 153–54. Remand on this matter would therefore be futile, and we thus reject Bushey's argument concerning Listing 12.05(C). *See Zabala*, 595 F.3d at 409.

### D. The ALJ's Assessment of the Medical Evidence

Bushey also argues that the ALJ erred in providing more weight to Hartman's September 26, 2013 psychiatric evaluation than Liotta's November 21, 2014 assessment and Dr. Nader Wassef (Wassef)'s September 26, 2013 assessment. We disagree. An ALJ may diminish the weight that she provides to a medical opinion if that opinion is "inconsistent with . . . other substantial evidence in [the] case record.'" *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ provided only some weight to Wassef's assessment, given that, among other things, Bushey reported to Wassef that she uses a cane and walks with a slight limp, even though "examinations by [Bushey's] pain management specialist and primary care providers [did] not report gait disturbance and balance problems and [did] not mention that she requires a cane for balance and walking." R. 18–19. The ALJ also provided minimal weight to Liotta's assessment, given that Liotta's conclusion that Bushey had "low

intellectual functioning" was belied by the fact that Bushey has no apparent difficulty following a complicated medication regime, and that she had previously worked as a cashier. R. 19. Finally, the ALJ gave "great weight" to Hartman's opinion, because Hartman's assessment that Bushey "is able to follow and understand simple directions and perform simple tasks" is consistent with the other record evidence. R. 19–20. We therefore see no error in the ALJ's decision to accord Hartman's assessment more weight than Liotta's or Wassef's. *See Poupore*, 566 F.3d at 307.

### E. Bushey's Credibility

Next, Bushey argues that the ALJ erred in discounting Bushey's subjective pain symptoms, in violation of 20 C.F.R. §§ 404.1529 and 416.929. However, an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Here, "substantial evidence" supported the ALJ's determination that Bushey's "testimony about [her] limitations was not fully credible." *Poupore*, 566 F.3d at 307. For example, although Bushey told the ALJ that she could not follow a story on television, R. at 45, she told *both* Wassef and Hartman that watching television was one of her hobbies, *see* R. at 376, 381. In addition, as the ALJ noted, Bushey's allegations concerning severe pain and severe functional loss were contradicted by her primary care physician's extensive notes and recorded findings to the contrary. Finally, although Bushey told the ALJ that she could sit for no longer than "10 [or] 15" minutes at a time, R. at 45, just a short time later, Bushey indicated that although she had been sitting for half-an hour, she did not need a break. R. 50. Substantial evidence therefore supported the ALJ's decision to discount Bushey's subjective pain symptoms. *See Poupore*, 566 F.3d at 307.

8

**F.  The ALJ's Step Five Determination**

Finally, Bushey argues that the ALJ erred at Step Five in determining that Bushey could work as—among other things—a document preparer, with approximately 44,854 jobs nationally. Bushey insists that the ALJ erred because the vocational expert that the ALJ consulted admitted that "a person who could not use their dominant right hand to manipulate objects could not be a document preparer," and that "a person who is off-task over 15 percent of the time cannot perform any work," Br. for Plaintiff-Appellant at 51–52. Bushey cites no evidence, however, to bolster her (implicit) assertion that she falls into either of these categories. The only indication in the record we could find to support Bushey's conclusion that she is "off-task over 15 percent of the time" is her attorney's conclusory assertion in a December 17, 2014 letter. *See* R. at 312. And the record strongly suggests that Bushey is indeed able to use her dominant right hand to manipulate objects. *See, e.g.*, R. 44 (Bushey's testimony that she has "normal use of [her] hands," and that she lifts milk and boxes of cereal to feed her children on a daily basis); R. 701–02 (assessment that Bushey's "muscle bulk" and "tone" were normal, and "[p]ower is 5/5 in all muscle groups, including . . . *intrinsic muscles of the hand*" (emphasis added)). We therefore reject Bushey's challenge to the ALJ's Step Five determination.

\*     \*     \*

We have considered Bushey's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
