09-4530-cv
Josephine L. Cage v. Commissioner of Social Security

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2011

(Argued: October 24, 2011      Decided: August 17, 2012)

Docket No. 09-4530-cv

----------------------------------------------------x

JOSEPHINE L. CAGE,

Plaintiff-Appellant,

-- v. --

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

----------------------------------------------------x

B e f o r e :  NEWMAN, WALKER and KATZMANN, Circuit Judges.

Appeal from a judgment of the United States District Court for the Western District of New York (Michael A. Telesca, Judge) upholding an administrative decision denying claimant's application for disability benefits under the Social Security Act.  Claimant challenges the finding, upheld by the district court, that drug addiction or alcoholism was a contributing factor material to the determination that she was disabled and that she therefore was ineligible for benefits.  We AFFIRM the judgment of the district court.

TIMOTHY W. HOOVER (Peter C. Obersheimer, on the brief), Phillips Lytle LLP, Buffalo, NY, for Plaintiff-Appellant.

MICHELLE L. CHRIST, Special Assistant U.S. Attorney (Stephen P. Conte, Regional Chief Counsel, Region II, Office of the General Counsel Social Security Administration, on the brief) for William J. Hochul, Jr., U.S. Attorney for the Western District of New York, for Defendant-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Plaintiff-appellant Josephine L. Cage appeals from a judgment of the United States District Court for the Western District of New York (Michael A. Telesca, Judge) upholding a decision by an Administrative Law Judge ("ALJ") of the Social Security Administration (the "SSA") denying Cage's application for Supplemental Security Income ("SSI") benefits. Although the ALJ determined that Cage met certain requirements for being "disabled" under the Social Security Act (the "Act"), 42 U.S.C. § 301 et seq., he found Cage ineligible for SSI on the ground that drug addiction or alcoholism ("DAA") was a contributing factor material to that determination.

On appeal, Cage argues that (1) the ALJ improperly imposed upon her the burden of proving that she would be disabled in the absence of DAA, and (2) the record did not support the ALJ's finding that she would not be disabled absent DAA, in particular

2

because the ALJ lacked a predictive medical or psychological opinion to that effect. She therefore asks that the district court's decision upholding the ALJ's ruling be vacated, and that the case be remanded to the district court with instructions to vacate the ALJ's decision and calculate retroactive SSI benefits.

We hold that the ALJ did not err in denying Cage benefits, because SSI applicants bear the burden of proving that they would be disabled in the absence of DAA, and substantial evidence supported the ALJ's finding that Cage would not be disabled absent DAA.

**BACKGROUND**

**I.    Factual Background**

Josephine Cage, who was born in 1960, has an extensive medical history. Over the course of these proceedings, she has offered evidence of numerous health conditions, including bipolar disorder, depression, suicidal ideation, dizziness, blackouts, memory loss and chest pain. Cage has received periodic primary and emergency medical care for her health problems since at least 2001, and with greater frequency beginning in December 2003, when she was admitted to the hospital for a variety of ailments. She has not worked since November 2003. Her employment history to that point included work as a retail cashier, hotel maid and home healthcare aide.

Cage also has a long history of drug and alcohol abuse, including alcohol abuse on the day she was admitted to the hospital in December 2003. Her ongoing medical care has included treatment for both DAA and her other conditions. At least one of Cage's healthcare providers has opined that Cage's substance abuse "made worse" her non-DAA impairments, and Cage has acknowledged that her drinking was "not helpful" to her mental health. There is medical evidence that Cage has attempted suicide only when under the influence -- although she testified that she has felt suicidal even while sober -- and that on the two occasions she reported hearing voices she had used crack cocaine. Cage also once explained to a doctor that she felt depressed because she had spent her money on cocaine.

Cage applied for SSI benefits on May 12, 2004, claiming that her various health impairments rendered her unable to work. After her application was initially denied, Cage proceeded in May 2007 to an ALJ hearing in Rochester, New York, at which she was represented by counsel.

In a decision dated August 7, 2007, the ALJ issued his findings and conclusions. Based on the medical records and Cage's testimony at the hearing, the ALJ found that Cage suffered from the following severe impairments: polysubstance dependence disorder, personality disorder, schizoaffective disorder and syncope. In view of those impairments, he determined that Cage

4

met the regulatory requirements for affective disorder, personality disorder and substance addiction disorder, see 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.08, 12.09 (2007). However, the ALJ further determined that in the absence of her drug and alcohol abuse, Cage would not meet the requirements for those disorders.  He also concluded, based on the testimony of a vocational expert, that Cage would be able to work absent DAA. He therefore found her not disabled within the meaning of the Act.  The record did not contain any consultive opinion predicting Cage's health and functionality in the absence of DAA; rather, in making his findings, the ALJ relied on the record as a whole.

In June 2008, the SSA Appeals Council denied Cage's request for review, making the ALJ's ruling the final decision of the Commissioner of Social Security (the "Commissioner") on Cage's May 2004 application.

On August 25, 2008, Cage reapplied for SSI benefits.  In December 2009, the same ALJ who had denied her first application found Cage disabled and entitled to benefits as of the date of her reapplication.  In particular, the ALJ concluded that DAA was not a contributing factor material to the second determination of disability because there was no evidence of DAA since the August 25, 2008 onset date of Cage's reapplication.

5

## II. Procedural Background

Having received benefits upon her second application, Cage in this suit seeks retroactive benefits, for the period between her 2004 and 2008 applications, to which she believes she is entitled by virtue of her first application.

In August 2008, around the time she reapplied for benefits, Cage challenged the ALJ's decision on her initial application in the district court. She contended that the ALJ had applied the wrong legal standards and that his decision was not supported by substantial evidence. The district court disagreed and granted the Commissioner's motion for judgment on the pleadings pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 12(c). See Cage v. Astrue, No. 08-CV-6364T, 2009 WL 3245643 (W.D.N.Y. Oct. 5, 2009). Relevant to this appeal, the district court held that (1) "[t]here is substantial evidence in the record that supports the ALJ's determination that [Cage's] substance abuse was a key factor contributing to her disability"; (2) Cage "has the burden of proving that absent her drug and alcohol abuse, she would still be disabled"; and (3) Cage "failed to satisfy [that] burden." Id., 2009 WL 3245643, at *4.

Cage appealed the district court's ruling to this Court. At our request, the parties briefed two issues in particular: (1) whether Cage "had the burden of proof before the [ALJ] with respect to whether her [DAA] was a contributing factor material

6

to the determination of disability"; and (2) whether "the [ALJ] erred by finding that [Cage's DAA] was a contributing factor where there was no medical opinion specifically addressing that issue." See Order Appointing Counsel, Cage v. Comm'r of Soc. Sec., No. 09-4530-cv (2d Cir. Apr. 23, 2010).

**DISCUSSION**

**I.  Standard of Review**

When reviewing an appeal from a denial of SSI benefits, "our focus is not so much on the district court's ruling as it is on the administrative ruling." Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991) (internal quotation marks omitted). But we do not substitute our judgment for the agency's, see Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002), or "determine de novo whether [the claimant] is disabled," Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted). Instead, "this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009); see also Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) ("[W]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision . . . ."). "Substantial evidence is 'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In our review, we defer to the Commissioner's resolution of conflicting evidence. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

**II. The Burden of Proof on DAA Materiality**

Cage first argues that the ALJ erred by requiring that she prove that she still would be disabled in the absence of her drug and alcohol abuse. She contends that the burden was on the Commissioner to prove that she would not be disabled absent DAA.

An SSI applicant qualifies as "disabled" under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This determination is reached through a five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled

8

without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (footnote omitted). As a general matter, "[t]he claimant bears the burden of proving that she suffers from a disability." Swainbank v. Astrue, 356 F. App'x 545, 547 (2d Cir. 2009) (summary order); see also 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i). It is only at step five that the burden shifts to the Commissioner. See Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011) (summary order).

When there is medical evidence of an applicant's drug or alcohol abuse, the "disability" inquiry does not end with the five-step analysis. See 20 C.F.R. § 416.935(a). In 1996, Congress enacted the Contract with America Advancement Act (the "CAAA"), which amended the Act by providing that "[a]n individual shall not be considered . . . disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. 104-121, 110 Stat. 847 (codified at 42 U.S.C. § 1382c(a)(3)(J)). The critical question is "whether [the SSA] would still find [the claimant] disabled if [she] stopped using

9

drugs or alcohol." 20 C.F.R. § 416.935(b)(1); see also 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability.").

The CAAA does not specify who bears the burden of proof on DAA materiality, and this is an issue of first impression in our circuit. But, with one possible exception, all of the other circuit courts that have considered this question have held that the claimant bears the burden of proving that her DAA is not material to the determination that she is disabled. See Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007); Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003); Doughty v. Apfel, 245 F.3d 1274, 1279-80 (11th Cir. 2001); Brown v. Apfel, 192 F.3d 492, 497-99 (5th Cir. 1999). Several district courts in this circuit have endorsed that view. See Badgley v. Astrue, No. 07-CV-399C, 2009 WL 899432, at *4 (W.D.N.Y. Mar. 27, 2009); White v. Comm'r, 302 F. Supp. 2d 170, 173 (W.D.N.Y. 2004); Eltayyeb v. Barnhart, No. 02 Civ. 925 (MBM), 2003 WL 22888801, at *4 & n.3 (S.D.N.Y. Dec. 8, 2003). The lone arguable outlier is the Tenth Circuit, which, in Salazar v. Barnhart, 468 F.3d 615 (10th Cir. 2006), did not explicitly state that the Commissioner bears the burden of proving DAA materiality, but which Cage believes

implied as much by reversing a ruling of DAA materiality that the court believed was not supported by substantial evidence. <u>See id.</u> at 622-26.

For the following reasons, we agree with the weight of the authority that claimants bear the burden of proving DAA immateriality:

First, as stated earlier, claimants bear the general burden of proving that they are disabled for purposes of receiving SSI benefits. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 80 (2d Cir. 1998). The Commissioner's burden at step five is a limited exception to this rule. We agree with our sister circuits that any expansion of the Commissioner's burden should find strong or explicit justification in statute, regulation or policy, and that no such justification exists here. <u>See</u> <u>Doughty</u>, 245 F.3d at 1280; <u>Brown</u>, 192 F.3d at 498. Thus, because the CAAA amended the definition of "disabled" to exclude conditions materially caused by DAA, proving DAA immateriality is best understood as part of a claimant's general burden of proving that she is disabled. <u>See</u> <u>Doughty</u>, 245 F.3d at 1280.

Second, claimants are better positioned than the SSA to offer proof as to the relevance of any DAA to their disability determinations because facts relevant to those determinations ordinarily would be in their possession. <u>See</u> <u>Parra</u>, 481 F.3d at 748; <u>Doughty</u>, 245 F.3d at 1280; <u>Brown</u>, 192 F.3d at 498. Fairness

11

and practicality therefore counsel in favor of placing this burden on them. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Third, holding claimants to this burden accords with Congress's purpose in enacting the CAAA. As explained by the Ninth Circuit,

> Congress sought through the CAAA to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy. [Placing the burden of proving DAA materiality on the Commissioner] provides the opposite incentive. An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated. His claim would be guaranteed only as long as his substance abuse continues -- a scheme that effectively subsidizes substance abuse in contravention of the statute's purpose.

Parra, 481 F.3d at 749-50 (internal quotation marks, citations and footnotes omitted).

Citing to certain CAAA legislative history, Cage counters that Congress opposed the receipt of benefits by "individuals whose sole severe disabling condition is drug addiction or alcoholism," H.R. Rep. No. 104-379, pt. 2, § 7, at 17 (1995) (emphasis added), whereas she suffers from various mental impairments in addition to DAA. But legislative history does not have the force of law, see Am. Hosp. Ass'n v. NLRB, 499 U.S. 606,

12

616 (1991), and cannot support rewriting the statute, which, as discussed above, amends the definition of "disabled" and therefore places the burden of proving DAA immateriality on the claimant. And in any case, the sources cited by Cage do not resolve the question before us. It is true that the CAAA's legislative history supports the intuitive proposition that "[i]ndividuals with [DAA] who have had another severe disabling condition . . . can qualify for benefits based on that disabling condition." H.R. Rep. No. 104-379, at 16. But this does not answer the question of who bears the burden of proof as to the effects of the other condition(s) in the absence of DAA.

Finally and as noted earlier, since 1999, when the Fifth Circuit decided Brown, courts overwhelmingly have held claimants to the burden of proving that they would be disabled in the absence of drug or alcohol abuse. Cage would have us believe that courts have erred in this respect for more than a decade but that neither Congress nor the Commissioner has sought to rectify this error by amending the U.S. Code or the C.F.R., respectively. We are unpersuaded.

In arguing that the Commissioner bore the burden of proving DAA materiality in her case, Cage relies principally on an internal SSA document that was never incorporated into the C.F.R. See Questions and Answers Concerning DAA from the 07/02/96 Teleconference-Medical Adjudicators, EM-96200 (Aug. 30, 1996)

13

(the "Teletype").[1]  The Teletype was issued by the Commissioner shortly after the CAAA's enactment to assist ALJs in implementing the CAAA.  It states in relevant part that:

> There will be cases in which the evidence demonstrates multiple impairments, especially cases involving multiple mental impairments, where the [medical and/or psychological consultant] cannot project what limitations would remain if the individuals stopped using drugs/alcohol.  In such cases, the [consultant] should record his/her findings to that effect.  <u>Since a finding that DAA is material will be made only when the evidence establishes that the individual would not be disabled if he/she stopped using drugs/alcohol, the [ALJ] will find that DAA is not a contributing factor material to the determination of disability</u>.

<u>Id.</u> (emphasis added).  The Teletype further advises that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate."  <u>Id.</u>  Although the Teletype does not speak in terms of burdens, it could be read to endorse a presumption in favor of the applicant -- i.e., that "a tie goes to [the claimant]," <u>Brueggemann</u>, 348 F.3d at 693.  So construed, it would "effectively shift[] the burden to the Commissioner to prove [DAA] materiality."  <u>Parra</u>, 481 F.3d at 749.

But Cage concedes that the Teletype, as an unpromulgated internal agency guideline, does not have the force of law and is entitled to deference only insofar as it has the power to

---

[1]   The Teletype is available at https://secure.ssa.gov/apps10/public/reference.nsf/links/04292003041931PM.

14

persuade.  See United States v. Mead Corp., 533 U.S. 218, 227-29 (2001); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).  The same four reasons that support our conclusion that the burden of proving DAA immateriality rests with the claimant render the Teletype, as construed by Cage, unpersuasive: (1) claimants bear the general burden of proving they are "disabled," the definition of which excludes disabilities materially caused by DAA; (2) claimants are better positioned to offer evidence relevant to DAA materiality; (3) the Teletype's burden allocation undermines the CAAA's aims; and (4) neither Congress nor the Commissioner has acted to "correct" the judiciary's imposition of this burden upon claimants.  Therefore, to the extent Cage's reading of the Teletype is correct, we decline to defer to it.[2]  See Parra, 481 F.3d at 749 (the Teletype's "interpretation is unpersuasive because it contradicts the purpose of the [CAAA]").

**III. The Sufficiency of the Evidence**

Cage next argues that, regardless of who bears the burden of proof on DAA materiality, the record did not permit the ALJ's determination that she would not be disabled absent DAA.

---

[2]    In addition to the Teletype, Cage's argument relies on an obsolete instruction by the Commissioner on determining DAA materiality.  See Social Security Administration Hearings, Appeals and Litigation Law Manual, I-5-4-14A ("HALLEX") (Nov. 14, 1997), available at http://ssaconnect.com/tfiles/DAA_II.htm.  Assuming arguendo that HALLEX supported Cage's burden argument, and forgetting for the moment that it is no longer effective, we would decline to defer to it for the same reasons we decline to defer to the Teletype as construed by Cage.

15

In briefing this appeal, Cage originally advocated a bright-line rule that "an ALJ cannot find that drug or alcohol use is a contributing factor where there is no medical opinion addressing the issue," Appellant Br. at 36 -- a position that the Tenth Circuit alone has endorsed based on its reading of the Teletype, see Salazar, 468 F.3d at 624.[3] We believe that such a rule, found nowhere in the U.S. Code or C.F.R., is unsound. It would unnecessarily hamper ALJs and impede the efficient disposition of applications in circumstances that demonstrate DAA materiality in the absence of predictive opinions. See McGill v. Comm'r of Soc. Sec., 288 F. App'x 50, 53 (3d Cir. 2008) (rejecting the "argu[ment] that any determination that DAA is material to the finding of disability must be based on expert psychiatric opinion evidence"); Doughty, 245 F.3d at 1280-81.

---

[3] In Salazar, the Tenth Circuit read the Teletype as "instruct[ing]" that a finding of DAA immateriality be made "where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations" in the absence of DAA. 468 F.3d at 624. The relevant portion of the Teletype, however, refers not to cases in which the record lacks predictive opinions, but in which the medical or psychological consultants "cannot project what limitations would remain if the individuals stopped using drugs/alcohol" (emphasis added). See Doughty, 245 F.3d at 1280-81 (rejecting the notion that the "Teletype imposes a new requirement upon the ALJ to seek a consultant's opinion when making a materiality determination"). But even were we to agree with the Tenth Circuit's reading of the Teletype, we would decline to defer to this instruction because we find its rationale unpersuasive.

In her reply brief, Cage disclaimed the above bright-line rule and argued only that a predictive medical opinion is necessary in cases, including hers, in which "'it is not possible for an ALJ to separate the limitations imposed by substance abuse [and] by other non-DAA impairments,'" Appellant Reply Br. at 21. By arguing that it was "not possible" for the ALJ to find DAA materiality in her case, Cage in substance is advancing a sufficiency-of-the-evidence challenge: Was the ALJ's finding of DAA materiality supported by substantial evidence, notwithstanding the lack of a consultive opinion predicting her impairments in the absence of drug or alcohol abuse?

In proceeding through the five-step sequential analysis, the ALJ made the following pertinent findings: At step three, he determined that Cage was per se disabled under Listings 12.04 (affective disorder), 12.08 (personality disorder) and 12.09 (substance addiction disorder). See 20 C.F.R. pt. 404, subpt. P, app. 1 (setting forth the Listings). Each of those Listings required findings that Cage suffered from two of the four so-called "Paragraph B" symptoms. The ALJ made such findings, concluding that Cage suffered marked difficulties in social functioning and with regard to concentration, persistence or pace. The ALJ then found that, in the absence of DAA, Cage would only suffer moderate difficulties in those respects. With this improvement, Cage would no longer qualify as per se disabled

17

under the Listings, so the ALJ proceeded to steps four and five. Based on the testimony of a vocational expert, the ALJ found that Cage's impairments in the absence of DAA would allow her to work.

Thus, at issue are the ALJ's findings that Cage's difficulties with social functioning, and with concentration, persistence and pace, would improve from "marked" to "moderate" in the absence of DAA. In our plenary review of the administrative record, we conclude that those findings were supported by substantial evidence. Cage concedes that a finding of DAA materiality appropriately could be made based on "medical evidence . . . during periods of sobriety [demonstrating] that the claimant would not otherwise be disabled absent the DAA," Appellant Br. at 30. While the record does not reveal any extended periods of sobriety during the relevant period following Cage's May 2004 application date, it does include, inter alia, positive evaluations of Cage conducted during inpatient admissions when Cage did not have access to drugs or alcohol. Specifically, the record reflects that (1) mental status evaluations, though not ideal in all respects, demonstrated that she "made good eye contact," was "cooperative," spoke normally, had coherent or linear thought processes, had average intelligence and knowledge, and was alert; (2) Cage reportedly had the ability to "perform rote tasks," "follow simple instructions" and "handle her finances"; and (3) Cage was

18

evaluated as being able to "interact with others adequately." And, as to the effect of Cage's DAA on her other impairments, the record included the following evidence: (1) an addiction therapist's opinion that Cage's DAA "made worse" her medical and emotional issues; (2) Cage's admission that she had attempted suicide only when under the influence; (3) Cage's admission that her DAA was "not helpful" to her mental health; (4) that Cage had used crack cocaine the two times she reported hearing voices; and (5) that Cage told a treating physician that she was depressed because she had spent her money on cocaine.

Taken together, this is "relevant evidence [that] a reasonable mind might accept as adequate to support [the] conclusion," Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010) (internal quotation marks and citation omitted), that Cage's difficulties with social functioning, and with concentration, persistence and pace, would improve from "marked" to "moderate" in the absence of DAA. Faced with this substantial evidence, we must uphold these findings and, consequently, the ALJ's determination that Cage would not be disabled were she to discontinue her drug and alcohol abuse.

Finally, Cage argues that the same ALJ's favorable ruling on her reapplication for benefits supports her appeal here. But the favorable ruling in 2009 was based on evidence not in the record on the original application, related in part to different

19

impairments than those at issue in the original application, and expressly stated that the ALJ saw no basis for reopening the original application.  The ALJ's 2009 ruling therefore does not bolster Cage's claim that the 2008 ruling was not supported by substantial evidence.  Cf. Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (given the deferential standard of review, two contrary rulings on the same record may be affirmed as supported by substantial evidence).

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.