17-2005-cv
Smith v. Berryhill

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of June, two thousand eighteen.

PRESENT: DENNIS JACOBS,
         CHRISTOPHER F. DRONEY,
                     Circuit Judges,
         STEFAN R. UNDERHILL,*
                     District Judge.

- - - - - - - - - - - - - - - - - - - - -X
Ritchie Smith,
         Plaintiff-Appellant,

         -v.-                                17-2005-cv

Nancy A. Berryhill, Acting
Commissioner of Social Security,
         Defendant-Appellee.
- - - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:          Peter A. Gorton, Endicott, NY.

FOR APPELLEE:           June Byun, Special Assistant
                        United States Attorney, on
                        behalf of Grant C. Jaquith,
                        United States Attorney for the

_____

* Judge Stefan R. Underhill, United States District Court for the District of Connecticut, sitting by designation.

1

Northern District of New York (Stephen P. Conte, Social Security Administration of Counsel, on the brief), New York, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Young, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Ritchie Smith appeals from the judgment of the United States District Court for the Northern District of New York affirming the denial of his application for disability insurance and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. § 401 et seq., respectively. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

To be disabled under the Act, a claimant must establish an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 20 C.F.R. § 404.1505(a).

The Commissioner of Social Security engages in a five-step process to determine disability status. The claimant must first demonstrate that he is not engaging in substantial gainful activity (step one) and that he has a "severe impairment" that limits his ability to do physical or mental work-related activities (step two). See id. §§ 404.1520(a)(4)(i), (ii). If his impairment meets the criteria of a per se disabling impairment as listed in the Act, he is entitled to disability benefits (step three). See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525. If not, the Commissioner considers whether there is sufficient residual functional capacity ("RFC") for the claimant to return to past relevant work (step four). See id. § 404.1520(a)(4)(iv). If the claimant is too impaired to

2

return to past relevant work, the burden shifts to the Commissioner in the fifth and final step to show that jobs exist in significant numbers in the national economy that the impaired claimant could perform. See id. § 404.1520(a)(4)(v).

Smith claims that he suffers from obesity, fibromyalgia, carpal tunnel syndrome, sleep apnea, bipolarity, depression, and pain from injuries to his left knee, back, and spine. Smith first applied for disability insurance benefits in June 2009 when he was recovering from a 2007 surgery on his left knee. His application was denied, and he requested a hearing before an administrative law judge ("ALJ"). The ALJ's initial decision was vacated and remanded for further proceedings in 2014. Smith appeared with counsel before ALJ Ramos for a second hearing on December 16, 2014, at which the ALJ heard testimony from Smith and a vocational expert, Mr. Pearson.

The ALJ's April 29, 2015 decision concluded that Smith was not disabled. Smith's knee replacements, carpal tunnel, cervical spine degenerative disc disease, obesity, fibromyalgia, and depression were deemed severe impairments; but the ALJ determined that Smith did not suffer from an impairment or combination of impairments comparable in severity to one of the listed impairments under the Act. See 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. The ALJ further concluded that Smith retained the RFC to perform unskilled sedentary work with certain limitations, see R. 726-34, and that while Smith could not return to his past work in sanitation or manufacturing, he could make an adjustment to other work existing in significant numbers in the national economy. See R. 734-36 (citing testimony from the vocational expert that Smith could work as a document preparer, food order clerk, or printed circuit board touch up screener).

Our review of the denial of disability benefits "focus[es] on the administrative ruling rather than the district court's opinion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). We review the record de novo to determine "whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." Zabala v. Astrue, 595

F.3d 402, 408 (2d Cir. 2010).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "In determining whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  We "may only set aside a determination which is based upon legal error or not supported by substantial evidence."  Arnone v. Bowen, 882 F.2d 34, 37 (2d Cir. 1989) (internal quotation marks and citation omitted); see also 42 U.S.C. § 405(g).

**1.** Smith argues that the ALJ's disability decision is not supported by substantial evidence because it rejects the uncontradicted opinions of his treating physicians, Drs. Wiesner, Mikloucich, and Fang, that he would be off-task and absent for significant portions of the day and month, respectively.  In a 2011 medical questionnaire, Dr. Fang expressed her opinion that Smith's physical conditions, namely his chronic neck and back pain and fibromyalgia, severely disrupted his ability to concentrate and sustain work pace.  R. 542-44.  Dr. Fang reasserted that opinion in a 2012 deposition in which she also opined that Smith's limitations were exacerbated by his mental health conditions.  Id. at 706-12.  In 2014, Drs. Fang, Mikloucich, and Wiesner each opined that because of Smith's functional limitations, he would be off-task 15-33% of the day and absent at least two-four days per month.  See id. at 1986-87 (finding by Dr. Fang that Smith would be off task between 20-33% of the day and would be absent more than four days per month), 2099-100 (finding by Dr. Mikloucich that Smith would require rest at work, would be off task 15-20% of the time, and would be absent two days per month), 2089-90 (opinion of Dr. Wiesner that Smith would be off task more than 33% of the day and would be absent more than four days per month).

Ordinarily, the "opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial

4

evidence." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527. However, the ALJ may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion may also be rejected if it is internally inconsistent or otherwise uninformative. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (summary order) ("A physician's opinions are given less weight when his opinions are internally inconsistent."). An ALJ must provide "good reasons" for affording limited weight to the treating source's opinion and more weight to a non-treating source. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); see 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ found that the opinions of all three treating physicians were not supported by clinical and diagnostic findings in the record, and that their conclusions regarding Smith's lack of focus and absenteeism lacked support in their own treatment notes and examination records. See R. 729 (Dr. Mikloucich), 731 (Dr. Weisner), 732 (Dr. Fang). Dr. Mikloucich, for example, who opined that Smith would be off task more than a third of the day, also expressed doubt that Smith qualified for disability. R. 2181. Further, the ALJ gave "little evidentiary value" to Dr. Mikoucich's opinion because he had only been treating Smith for a very short time and, at the time of treatment, Smith's conditions were "stable" and "controlled." R. 729.

Dr. Wiesner's July 2014 opinion that Smith would be off task for more than a third of the day is undermined by his treatment notes, as well as treatment notes by others in his medical group, which show that Smith healed properly after his knee surgery. See R. 664 (treatment note by Dr. Weisner stating Smith's incision is "well and benign" and that there was no effusion or instability), 666 (treatment note by Dr. Weisner's colleague stating that Smith reported "doing very well" and was taking pain medication.).

5

The ALJ assigned "little weight" to Dr. Fang's opinion with respect to Smith's work pace and concentration because the ALJ interpreted her opinion to be based on Smith's mental condition, an opinion that did not follow from her treatment history with Smith and fell outside her specialization. R. 731-32 (citing R. 542-44); see also 20 C.F.R. § 404.1527(d)(2) (treating physician's opinion entitled to less weight when the opinion is not from a specialist); Halloran, 362 F.3d at 32. Although Dr. Fang testified in a 2012 deposition that Smith's depression exacerbated his pain, R. 710-11, it is clear from the remainder of her testimony and treatment notes that Dr. Fang's opinion about Smith's absenteeism and concentration were based upon his physical limitations, not mental ones. See R. 542-44 (2011 opinion that "chronic neck/back pain" and fibromyalgia led to severe concentration and work pace limitations), 710 (2012 testimony that fibromyalgia caused Smith's diminished concentration and work pace); see also id. at 1986-88 (2014 opinion that "back pain, fibromyalgia" caused limitations to Smith's work pace and concentration and led to increased absenteeism).

The ALJ further limited the weight assigned to Dr. Fang's opinion because there was an "absence of clinical and/or diagnostic findings to support the increased limitations" as well as a gap in Dr. Fang's treatment of Smith from January 2011 to December 2013. R. 732. The record reflects, however, that Dr. Fang treated Smith on the following dates: July 14, 2011 (R. 1772); September 22, 2011 (R. 1770); November 3, 2011 (R. 1768); November 21, 2011 (R. 1766); February 6, 2012 (R. 1764); March 12, 2012 (R. 1762); April 18, 2012 (R. 1758); June 7, 2012 (R. 1754); September 18, 2012 (R. 1752); and January 22, 2013 (R. 1748).

These treatment notes from Dr. Fang and her colleagues at Comprehensive Pain Relief reflect that Smith's condition was "stable" and that he was in "no acute distress," although he consistently reported that his pain was at a severity level of eight or more out of ten. R. 1741-1772, 1932-1984. The records further reflect, though, that Smith reported that medication was helping with pain management. R. 1749, 1942, 1947, 1952, 1957, 1963, 1969, 1980. In June 2013, Smith began receiving trigger point injections which

6

also helped to relieve his fibromyalgia pain, R. 1941-42, 1963, which Smith reported in May 2014 to be "very effective." R. 1974. Notwithstanding the ALJ's mischaracterizations of Smiths' treatment history with Dr. Fang's, the internal inconsistencies within Dr. Fang's treatment notes and the medical record provide a basis for discounting her opinion as a treating physician. See Halloran, 362 F.3d at 32; Micheli, 501 F. App'x at 28 (summary order); see also Fischer v. Bowen, 869 F.3d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect [ALJ] opinion[.]").

Other evidence in the record offers substantial evidence to support the RFC ruling. The ALJ relied upon the findings and conclusions of other treating physicians such as Dr. Federowicz, and numerous consulting physicians including Drs. Datta, Jenouri, and Schulman, in assessing that Smith had the capacity for simple sedentary work. R. 730-31, 733. These physicians' opinions and treatment records contradict the substance of the claim that Smith's knee and back injuries keep him off-task or force him to be absent from work four or more days a month. See, e.g., Garcia v. Colvin, No. 14-cv-4798, 2015 WL 4603422, at *6 (E.D.N.Y. Jul. 30, 2015) (permitting the non-treating specialist to rebut the treating physician's conclusions); see also Snell, 177 F.3d at 133. The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence. Veino v. Barnhart, 312 F.3d 578, 588-89 (2d Cir. 2002).

Smith contends no physician contradicts the opinions of Smith's three treating physicians as to his ability to stay on task and maintain regular attendance. Appellant's Br. at 19. But the ALJ was not required to identify evidence explicitly rebutting the opinions of Smith's treating physicians before discounting or rejecting them. See Halloran, 362 F.3d at 32 (holding that, although the ALJ did not explicitly follow the treating physician rule, the record and opinion made clear that the ALJ "applied the substance" of the rule and the claimant "received the rule's procedural advantages"). The ALJ deemed aspects of the treating physicians' opinions critically flawed and

7

found that the opinions were inconsistent with other substantial evidence. See Rosa, 168 F.3d at 78-79; see also Burgess, 537 F.3d at 128.

Lastly, the ALJ did not "arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). In Balsamo, it was the Commissioner's burden to demonstrate that the claimant retained the functional capacity for certain work. Id. at 80. Here, Smith had a duty to prove a more restrictive RFC, and failed to do so. 42 U.S.C. § 423(d)(5); cf. Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

**2**. Smith separately challenges the RFC on the ground that the ALJ ignored evidence that Smith's depressive psychiatric state precluded even simple, low-stress work. The ALJ reviewed the opinions of Dr. Legg and Ms. Hubbard (a social worker), which considered Smith's debilitating mental limitations, but determined that they were contradicted by other record evidence. R. 724-25. Specifically, the treatment records of Nurse Practitioner Cron, and Drs. Noia, Loomis, Russell, and Harding support a finding that Smith's depressive episodes, anxiety, and mania would not prevent Smith from performing simple tasks. R. 733; see R. 2184-98 (treatment records by Nurse Practitioner Cron), 498-500 (examination record by Dr. Noia that reflects Smith's mental status was unremarkable), 515-17 (conclusion of Dr. Harding in mental capacity assessment that Smith retained the capacity for unskilled work). In any event, the ALJ did list Smith's depressive disorder as a "severe" condition at step two of the sequential analysis and measured his RFC accordingly. R. 720, 726.

"[W]e defer to the Commissioner's resolution of conflicting evidence," Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted), and accept the weight assigned to the inconsistent opinions as a proper exercise of the ALJ's discretion. See Veino, 312 F.3d at 588-89 (2d Cir. 2002); see also Diaz v. Shalala, 59

8

F.3d 307, 313 n. 5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record.").

**3.** Smith argues that the testimony from the vocational expert, Mr. Pearson, did not support the ALJ's conclusion that jobs exist in significant numbers in the national economy within Smith's RFC. This argument fails for the same reason as Smith's principal challenge to the RFC discussed above. Smith criticizes the ALJ's reliance on an RFC that did not incorporate the functional limitations asserted by Smith's treating physicians regarding attendance and ability to remain on task. But these opinions were discounted, and their conclusions rejected. The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC *determined by the ALJ* in the fourth step of the sequential analysis. See 20 C.F.R. § 404.1546(c). It was therefore proper for the vocational expert to respond to hypotheticals premised on the ALJ's RFC. R. 817–19.

For the foregoing reasons, and finding no merit in Smith's remaining arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

9