NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 5, 2018
Decided August 14, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-2878

| | |
|---|---|
| JOHN G. BARRETT, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 16 CV 50257 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, *Defendant-Appellee.* | Iain D. Johnston, *Magistrate Judge.* |

**O R D E R**

John Barrett applied for disability insurance benefits and supplemental security income based on limitations from bipolar disorder and alcohol addiction. If an administrative law judge (ALJ) had found him disabled, then Barrett would shoulder the burden of showing that his alcoholism was not material to his disability. An ALJ found that he was not disabled, however, even when considering his alcohol addiction, and denied him benefits. The district court agreed, and we affirm.

**I**

Barrett started drinking alcohol as a teenager, and he began to drink heavily when he was 19 years old, near the time his brother committed suicide. At age 27, he was hospitalized and reported depression and suicidal ideation; at this time, he was drinking one to two 6-packs per day, four to five days per week. He stopped working as an assistant manager at Walgreens in January 2009.

From then on, Barrett's condition worsened, and initial treatment proved ineffective. In April 2010, he reported to his primary care physician, Dr. Paul Reith, that he was having problems with alcohol and anxiety. Dr. Reith prescribed medications to help Barrett manage his mental health issues. He went to Rosecrance, a detoxification and rehabilitation facility, where he was diagnosed with alcohol dependence. Soon after leaving Rosecrance, he began treatment with Raymond Garcia, a psychiatrist. Within months, though, Barrett was anxious and drinking excessively again. Barrett was admitted to the emergency room in October, intoxicated and depressed, and then returned to Rosecrance, where staff diagnosed him with alcohol dependence, anxiety, and bipolar disorder. When he left Rosecrance, he relapsed immediately and had to return for a third round of treatment for the same diagnoses. He kept drinking excessively through 2011, leading to another hospitalization.

For some time when he was not hospitalized or in rehab in 2010 and 2011, Barrett worked at his father's law practice, summarizing depositions and medical records, and engaging in "logic-related" activities. His father fired him, however, after he caught Barrett drinking liquor in the office. He also took the Law School Admissions Test (LSAT) in 2010, and he received a below-average score.

Barrett turned his life around in December 2011 when he entered the 13-month Men's Recovery Program at the Las Vegas Rescue Mission, a rehabilitation facility. Barrett's case manager said that Barrett had a "profound alcohol problem" and that obtaining treatment "is absolutely necessary and should be prioritized." Barrett attended individual therapy and group therapy for alcoholics. He also spent up to eight hours per day in "work therapy." He started this therapy by watching the security gate and later progressed to maintaining class attendance records for 100 residents. After only about a month, his case manager recorded that Barrett "feels good mentally and physically" and "all in all he is doing well." While the environment at the Mission was structured and Barrett had supervision there, Barrett largely functioned independently during his stay. Since leaving the Mission in January 2013, Barrett has

finished law school. In addition, he remains sober and stable, without the use of medication.

Reflecting on Barrett's alcohol addiction, Dr. Garcia opined that he had a "primary psychiatric condition with a secondary substance use disorder," and that "[u]nresolved grief and post-traumatic stress over his brother's suicide fueled his mood disorder and alcohol abuse." Dr. Garcia also concluded that Barrett was disabled and could not work before completing the program at the Mission.

Barrett applied for disability benefits for the period of September 1, 2009 through January 7, 2013 (the date he left the Mission), and an ALJ found that he was not disabled. The ALJ applied the five-step analysis required by 20 C.F.R. § 404.1520(a). She said that Barret did not engage in substantial gainful activity during the closed period (step one) and that his alcohol dependence, bipolar disorder, and posttraumatic stress disorder were severe impairments (step two).

Most important for this appeal, the ALJ found at step three that Barrett's impairments were not presumptively disabling. In particular, she found that Barrett did not meet the "Paragraph C" criteria of listing 12.04. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2015). At the time of the ALJ's ruling, Paragraph C was satisfied if, in relevant part, the claimant had "repeated episodes of decompensation" of extended duration—that is, in one year, the claimant had the equivalent of three, two-week increases in symptoms with a loss of adaptive functioning. *Id.* An episode of decompensation can be inferred from "the need for a more structured psychological support system" or from a showing of "1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.*

Regarding Paragraph C, the ALJ wrote that all of Barrett's conditions taken together "posed no more than moderate limitations" on his ability to work. Each of his episodes of decompensation, she continued, "was predicated by a relapse of alcohol," and Barrett was "primarily treated for alcoholism" when hospitalized. This conclusion is significant because the Social Security Act bars a claimant from receiving benefits if his alcoholism is "material" to his disability, i.e., that he would not be disabled but for his alcohol addiction. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006). She gave no weight to Dr. Garcia's opinion on Barrett's conditions because she found that his opinion was inconsistent with the record.

The ALJ then found that, even when considering impairments from his alcoholism in conjunction with the others, Barrett had the residual functional capacity

during the closed period to perform simple, repetitive, unskilled work in two-hour increments, with occasional changes to his environment and occasional decision making. In making her assessment, she emphasized that Barrett had worked in a small law firm and while at the Mission.

Finally, based on hearing testimony from a vocational expert, the ALJ concluded that Barrett could have performed his past work of a housekeeper (step four) or work as a dishwasher or janitor (step five), during the alleged closed period of disability.

The Appeals Council denied review, making the ALJ's decision the final word of the Commissioner. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). A magistrate judge, presiding by consent, 28 U.S.C. § 636(c), affirmed that decision, concluding that the ALJ "essentially" found that Barrett's alcohol use was material to his disability, and that substantial evidence supported the implicit finding.

## II

On appeal Barrett argues that substantial evidence does not support the ALJ's conclusion that his alcoholism was material to his disability. *See Kangail*, 454 F.3d at 628–29. The ALJ, however, concluded that Barrett was not disabled considering all his impairments, so any error regarding her materiality analysis is harmless. In fact, because she determined that Barrett was never disabled even with his alcohol addiction, she need not even have considered whether his alcoholism was material to his limitations. *See Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). An ALJ must determine if a claimant's drug or alcohol addiction is material to his or her disability only if the ALJ first finds that the claimant is disabled. Soc. Sec. Ruling, SSR 13–2p; Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA), 78 Fed. Reg. 11939, 11941–42 (Feb. 20, 2013). Here, the ALJ determined that Barrett's impairments, including his alcoholism, taken together were at most moderately limiting, and she concluded that he could have sustained full-time employment. That conclusion is supported by substantial evidence: Barrett performed in workplace-like settings tasks such as summarizing depositions and medical records and maintaining attendance records of 100 people. He also sat for the LSAT—though the ALJ emphasized his "above-average" score when it was in fact below average, the fact that he sat for the test and achieved the score he did was consistent with someone capable of working.

Barrett interprets the ALJ's decision differently and argues that the ALJ erred when she effectively determined that Barrett's alcoholism was material before

concluding that Barrett was disabled considering all his impairments. He reads the ALJ's statement that Barrett's alcohol use "predicated" his episodes of decompensation as implicit findings both that Barrett satisfied the Paragraph C criteria and that alcoholism was material to his disability. Even based on his interpretation, though, he was not prejudiced by the ALJ's shortcut because, in assessing materiality, the ALJ *accepted* that Barrett suffered episodes of decompensation and assumed he was disabled. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

Continuing with his reading, Barrett next disagrees with the ALJ's determination that his alcoholism "predicated" his episodes of decompensation, but he did not carry his burden of showing that his alcohol addiction was immaterial to his purported disability. *See* SSR 13–2p at 11941; *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing *Parra*, 481 F.3d at 748; *Brueggemann v. Barnhart*, 348 F.3d 693 (8th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1279–80 (11th Cir. 2001); *Brown v. Apfel*, 192 F.3d 492, 497–99 (5th Cir.1999)). Barrett relies on Dr. Garcia's opinion that his alcoholism was a "secondary" condition, "fueled" by his "psychiatric" conditions. Dr. Garcia did not explain the basis for his conclusion, however, and a treating physician's unsupported conclusion is not controlling. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). True, bipolar disorder can precipitate substance abuse, *see Kangail*, 454 F.3d at 629, but without more than Dr. Garcia's cursory opinion, which the ALJ reasonably discredited based on the record including the notes from the Mission, Barrett did not show that to be his case. *See Parra*, 481 F.3d at 748–49.

Moreover, even if the ALJ did implicitly conclude that Barrett was disabled when considering his alcoholism, the record contains substantial evidence that Barrett's alcoholism was in fact material to his disability. Evidence of improvement, including positive evaluations during a period of abstinence, is the "best evidence" that a claimant's drug or alcohol addiction is material. SSR 13–2p at 11943; *Cage*, 692 F.3d at 127. After a month of maintaining sobriety at the Mission, (before any notes of therapy appear in the record), Barrett's case manager recorded that Barrett "fe[lt] good mentally and physically." Barrett did not report symptoms of bipolar disorder or posttraumatic stress disorder. He attended all his classes and performed "excellent[ly]" in work therapy. Since leaving the Mission in 2013, Barrett continues to attend group therapy for alcoholism and he meets quarterly with Dr. Garcia to help him stay sober and off any mental health medication. He obtained his law degree and is now practicing law. His positive achievements since 2013 suggests that his alcoholism was material during the closed period. As for his episodes of decompensation, he was hospitalized during the closed period for alcohol intoxication; his primary diagnosis after each of his three stays

at Rosecrance was for alcohol dependence; and the Mission "prioritized" treatment for his "profound alcohol problem." Perhaps Barrett summarized it best himself in his application for benefits: "I am an alcoholic. My addiction impairs my ability to obtain a job, keep a job, attend work consistently, get to work on time, perform my work appropriately …." If the ALJ implicitly concluded that alcoholism "predicated" his episodes of decompensation, she had substantial evidence for that finding.

Therefore, the judgment of the district court is AFFIRMED.