23-54-cv
*Spottswood v. Kijakazi*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand twenty-four.

PRESENT:
> **BARRINGTON D. PARKER,**
> **ALISON J. NATHAN,**
> **SARAH A. L. MERRIAM,**
> *Circuit Judges.*

_____

Melissa Spottswood,

> *Plaintiff-Appellant,*

> v.                                                                 No. 23-54-cv

Kilolo Kijakazi, Acting Commissioner of
Social Security,

> *Defendant-Appellee.**

_____

* The Clerk of Court is respectfully directed to amend the caption accordingly.

_____

FOR PLAINTIFF-APPELLANT:

PETER A. GORTON, Lachman & Gorton, Endicott, NY.

FOR DEFENDANT-APPELLEE:

MOLLY E. CARTER (Ellen E. Sovern, on the brief), *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Dancks, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Melissa Spottswood appeals from a December 7, 2022 judgment of the United States District Court for the Northern District of New York (Dancks, *M.J.*) affirming the Commissioner of Social Security's denial of her applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. The administrative law judge (ALJ) who evaluated her claims determined that although she suffered from

2

severe impairments, she retained the residual functional capacity (RFC) to perform light work with the limitation that she could only stand or walk for four hours and sit for six hours. The ALJ also found additional environmental and postural limitations. The ALJ concluded that this RFC allowed Spottswood to return to her past work as a small products assembler. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm the district court's judgment.

Determinations of disability under Title II and Title XVI of the Social Security Act are governed by parallel regulations that are, as relevant here, equivalent. *See Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Those determinations follow a five-step process, by which the Commissioner decides:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process stops if at any of these sequential steps the Commissioner can make a finding of disability or nondisability. *See Schillo*, 31 F.4th at 70; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps; at the fifth step, the burden shifts to the Commissioner. *Schillo*, 31 F.4th at 70.

Under the regulations applicable to Spottswood's claims, the Commissioner owes no special deference to any particular medical opinion in the record. *See id.* at 71 & n.1; 20 C.F.R. § 404.1520c. Rather, the Commissioner must evaluate the persuasiveness of medical opinions in light of several factors, the most important of which are "supportability" (how well supported an opinion is by medical evidence and the explanations given in the opinion) and "consistency" (how consistent an opinion is with other evidence in the record). *See* 20 C.F.R. § 404.1520c(a), (c).

"On an appeal from the denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted). We employ a highly deferential standard of review, under which the findings of the agency are conclusive if supported by substantial evidence and free from legal error. *Schillo*,

31 F.4th at 74.  That standard means that "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (cleaned up).  We are not to reweigh evidence and must uphold a determination when "evidence is susceptible to more than one rational interpretation."  *Id.* (quotation marks omitted); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

Here, our analysis focuses on step four of the process.  An ALJ determined that Spottswood suffered from severe impairments—type two diabetes with neuropathy, chronic kidney disease, gastroparesis, chronic obstructive pulmonary disease, anemia, and chronic renal insufficiency—but also determined that she had the RFC to perform light work requiring no more than four hours per day of standing or walking, which allowed her to return to her previous work.  A claimant's RFC is defined as "the most [a claimant] can still do despite [his or her] limitations," and is assessed by the ALJ based on all of the relevant evidence in the record.  20 C.F.R. § 404.1545(a)(1), (3); *id.* § 404.1546(c).  Spottswood argues that she proved a more restrictive RFC and does not, in fact, have the residual functional capacity to return to her prior work.  Applying the appropriate,

deferential standard of review, we conclude that substantial evidence supports the ALJ's determination.

In determining Spottswood's RFC, the ALJ relied on evidence sufficient for a reasonable factfinder to reach the same conclusion: medical opinion evidence, voluminous records of Spottswood's physical examinations and medical history, and Spottswood's own statements about her symptoms and activities.

The ALJ found somewhat persuasive the opinion of Dr. Gilbert Jenouri, who performed a consultative examination of Spottswood before her revised disability onset date.[1]  Dr. Jenouri found limitations in Spottswood's ability to squat, but the examination was otherwise largely normal.  Spottswood was able to walk on her heels and toes, albeit with noted difficulty, and showed normal stance and gait. Dr. Jenouri, thus, concluded that Spottswood had only "[m]ild restrictions walking and standing long periods, bending, stair climbing, lifting, and carrying." App'x 84.  The ALJ found this opinion somewhat persuasive because it was supported by Dr. Jenouri's examination and consistent with Spottswood's ability to work at the time; however, the ALJ recognized that evidence postdating the

---

1 Spottswood had originally alleged a disability onset date that was prior to this examination, but then amended it to a later date.

6

examination suggested greater limitations.   App'x 39.

The ALJ also relied partially on the opinion of a state agency consultant, Dr. S. Putcha, who reviewed Spottswood's medical records available at the time including Dr. Jenouri's report, and ultimately concluded that Spottswood retained the capacity to stand or walk (with normal breaks) for about six hours out of a normal eight-hour workday.   As with Dr. Jenouri, the ALJ found Dr. Putcha's opinion persuasive at the time it was given, but again noted that subsequent evidence suggested greater limitations.

In particular, the ALJ found that Spottswood's treatment history and varying control of her symptoms supported some limitation on her ability to work. However, the ALJ highlighted that Spottswood's physical examinations remained largely normal and showed "no loss of strength or motion in the lower extremities, [and] no instability . . . ."   App'x 40.   The ALJ further noted that Spottswood had recently reported that her blood sugar readings were satisfactory and she was no longer experiencing frequent hypoglycemia, that she was walking every day, and that she hoped to move out of her current living situation with her niece in order to live on her own.   *Id.*   Evaluating all of this evidence, the ALJ assessed an RFC slightly more restrictive than that suggested by Dr. Jenouri and Dr. Putcha,

concluding that Spottswood was limited to standing or walking for four hours per workday, with additional restrictions on other activities. *Id.* at 38.

In reaching this determination, the ALJ reasonably declined to rely on two medical opinions she found unpersuasive. First, in response to a questionnaire, nurse-practitioner Jennifer LaVare opined that Spottswood "may experience pain," that her conditions would cause diminished concentration and diminished work pace, that her conditions would be expected to produce "good days and bad days," and that she might need to rest at work depending on the day. App'x 99. LaVare declined to opine on how much time Spottswood could be expected to miss work and how long she could be expected to stand or walk during an eight-hour workday. In finding this opinion unpersuasive, the ALJ observed that LaVare gave "little more than speculative support" to answers on the questionnaire and offered only vague opinions as to Spottswood's capabilities. App'x 41. The ALJ also noted that LaVare's findings did not reflect consistency with other evidence. *Id.* Indeed, LaVare linked Spottswood's potentially diminished concentration to severe hypoglycemia, but the record reflected that Spottswood was no longer experiencing frequent hypoglycemia by that time. *Id.* at 88-89.

8

Second, nurse-practitioner Elizabeth Romeo, Spottswood's primary care provider, filled out the same questionnaire and opined that Spottswood would need to be off-task more than 33% of the workday, would need to miss more than four workdays per month, and would be able to stand or walk for less than one hour per workday. The ALJ found Romeo's opinion "wholly unpersuasive," because the responses to the questionnaire lacked any supporting analysis and were contrary to both Spottswood's generally normal physical examinations and her own statements about her capabilities and activities. App'x 41. The record contains evidence to support this conclusion. Spottswood stated that she performed housework and shopped for groceries, her anemia was improving such that she experienced diminished fatigue, and she had difficulty standing or walking "[s]ometimes, not much." Administrative Record (A.R.) 39-40, 43, 45-47. Her medical records indicated normal gait, no muscle or joint pain, and full strength and a full range of motion in her extremities. *Id.* at 440, 448, 500, 502, 504.

Examining the full record, "we cannot say that no reasonable factfinder could have reached the same conclusion." *Schillo*, 31 F.4th at 78. Spottswood argues for evaluating specific evidence differently and finds fault with specific

9

aspects of the ALJ's reasoning, but she does not demonstrate any legal error or meet the demanding standard for showing that substantial evidence does not support the ALJ's conclusion.

Contrary to Spottswood's arguments on appeal, the ALJ's reasoning was not merely conclusory. The ALJ appropriately explained why she was relying (in a qualified way) on the opinions of Dr. Jenouri and Dr. Putcha and why she was not relying on the opinions of nurse-practitioners LaVare and Romeo. And the ALJ had before her sufficient evidence to contextualize Dr. Jenouri's arguably vague language regarding "mild" restrictions. *Cf. Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (finding a "remarkably vague" medical opinion insufficient by itself to support RFC). Spottswood highlights specific findings in Dr. Jenouri's examination, identifies a handful of apparent errors in Dr. Putcha's summarization of Dr. Jenouri's findings, and argues for evaluating LaVare's and Romeo's opinions differently—but she fails to show that the record would require a reasonable factfinder to reach a different result.

Finally, Spottswood argues that the ALJ impermissibly substituted her lay opinion for medical judgment and insufficiently explained how she arrived at her specific four-hour standing or walking limitation in the RFC. This argument is

10

without merit. It was the ALJ's responsibility to assess Spottswood's RFC, and the RFC "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Here, the four-hour figure simply reflects a slight downward departure from Dr. Putcha's opinion in light of other record evidence, though not as extreme of a departure as suggested by nurse-practitioner Romeo—a determination that a reasonable factfinder could make based on the totality of evidence in this record. Once again, Spottswood fails to demonstrate that the ALJ's finding rested on legal error or was not supported by substantial record evidence.

\* \* \*

We have considered the remaining arguments advanced by Spottswood and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11